No. 101,766

DONALD R. RUCKER and BARBARA L. RUCKER, *Appellees*, v. EARL R. DELAY and LEAH GRIFFITH DELAY, HENRY CHOQUETTE and RUTH MARY CHOQUETTE, LEIGH G. DELAY, EDITH L. DELAY, JOHN E. DELAY, ELIZABETH BENNETT, HARRIET DELAY, MARIAN ALLENDER, ELOISE HAYES, and WENDY ANDERSON, *Appellants.*

(289 P.3d 1166)

Opinion filed October 19, 2012.

*Richard N. Raleigh*, of Medicine Lodge, argued the cause and was on the brief for appellants.

*Alan C. Goering*, of Goering and Slinkard, of Medicine Lodge, argued the cause and was on the brief for appellees.

*David E. Pierce*, of Topeka, was on the brief for *amicus curiae* David E. Pierce.

The opinion of the court was delivered by

BILES, J.: This is a quiet title action challenging a claimed interest to oil and gas rights reserved in 1924 when the landowners sold the surface and mineral estate, but kept for themselves and their heirs what was described as a portion of the landowners' one-eighth interest in the oil, gas, or other minerals that might later be developed. The district court and Court of Appeals held that this reservation was a royalty interest and invalidated it under the rule against perpetuities. We hold that the royalty interest is not void under the rule against perpetuities because it was reserved in the grantors and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties stipulated to the following facts. In 1924, Earl R. DeLay and his wife Leah Griffith DeLay executed a general warranty deed transferring title to certain lands in Barber County, Kansas, to Lurena Keener. The warranty deed contained the following reservation:

"The grantor herein reserves 60% of the land owner's one-eighth interest to the oil, gas or other minerals that may hereafter be developed under any oil and gas lease made by the grantee or by his subsequent grantees."

Earl ratified an oil and gas lease in 1946, and two of his successors ratified an oil and gas lease in 1966. No other leases have been executed or ratified, and no oil or gas has ever been produced on the land. Earl and Leah's successors in interest have paid taxes on 6 mineral acres, as their interest is expressed in the Barber County Clerk's Severed Mineral Interest Book.

In 2008, the current property owners, Donald R. Rucker and Barbara L. Rucker, filed a quiet title action against Earl and other heirs of Earl and Leah DeLay (the DeLays). The Ruckers alleged the reservation in the deed was a royalty interest that violated the rule against perpetuities. The DeLays alleged the reservation created a mineral interest and the rule against perpetuities did not apply. In other words, the case presented two issues: (1) What interest was created by the language of the deed; and (2) Is that interest valid?

Based on the stipulated facts, the district court found:

"The language here attempts to create an interest which has no leasing rights (nonparticipating) with no reservation of a right to enter and produce. The one-eighth is a traditional leasehold royalty a portion of which is attempted to be reserved forever but which may not ever come to fruition (if land is never leased or developed)."

The district court held that the deed created a perpetual, non-participating, royalty interest that was subject to termination under Kansas caselaw. It held further that this royalty interest was void because it violated the rule against perpetuities. In so ruling, the district court added that the result was required by what it considered to be settled Kansas precedent, but it expressed concern that the result was inequitable and not what the parties to the 1924 transaction intended. It commented that "[o]ccasionally, the application of the law is not fair in a traditional sense."

Based on its decision, the district court declined to rule on a pending issue regarding delay in recording the deed, but the appellate briefs explain that this issue is premised on the reserved interest being a mineral interest, rather than a royalty interest as the court found. See G.S. 1935, 79-420 ("[W]hen such reserves or leases are not recorded within ninety [90] days after execution, they shall become void if not listed for taxation."). The DeLays filed a timely notice of appeal to the Court of Appeals.

Like the district court, the Court of Appeals held that the deed created a royalty interest. It also reluctantly applied the rule against perpetuities to void the interest, citing its obligation to follow Kansas Supreme Court caselaw. But the panel observed: "Were we to write on a clean slate, our reasoning and result would be different."

*Rucker v. DeLay*, 44 Kan. App. 2d 268, 282, 235 P.3d 566 (2010). The DeLays petitioned for this court's review, which we granted. Jurisdiction arises under K.S.A. 20-3018(b) (review of Court of Appeals decision).

## ANALYSIS

The DeLays' threshold argument to the Court of Appeals was that the deed created a mineral interest, not a royalty interest, but the court disagreed. In their petition for review to this court, the DeLays specified that they sought review of: (1) "[T]he Court of Appeals determination that the reservation by the Appellant's predecessors in interest is violative of the rule against perpetuities and as a result the interest is quieted"; and (2) "whether production should continue to be the vesting event if the rule against perpetuities is to continue to be applied to such situations." These issues relate only to the panel's holding that the rule against perpetuities voided the royalty interest. They do not challenge the holding that the reserved interest in this case was a royalty interest.

At oral argument, the DeLays stated that they had intended to continue arguing that the deed created a mineral interest and claimed the lower courts erred in finding a royalty interest. But that issue is beyond our reach at this stage. Under Kansas Supreme Court Rule 8.03(a)(5)(c) (2011 Kan. Ct. R. Annot. 70), this court will not consider any issues not presented in the petition for review or fairly included therein, absent application of a permissive exception for plain error. Moreover, under Supreme Court Rule .8.03(g)(1), a party must allege that an issue was decided erroneously by the Court of Appeals in order for the issue to be properly before the Supreme Court on petition for review. *State v. Allen*, 293 Kan. 793, Syl. ¶ 2, 268 P.3d 1198 (2012).

For these reasons, we hold that any argument regarding whether a royalty or mineral interest was created by the deed was not preserved for appeal. Therefore, in deciding the issue that was preserved, we will presume the Court of Appeals and district court correctly held that the deed created a royalty interest. *Rucker*, 44 Kan. App. 2d at 278-79 ("the reserved interest is that of a royalty interest").

Appellate courts "have de novo review of cases decided on the basis of documents and stipulated facts." *In re Trust D of Darby*, 290 Kan. 785, 790, 234 P.3d 793 (2010). In this case, whether the DeLays' royalty interest is void under the rule against perpetuities is a question subject to de novo review.

At the outset, it is helpful to define the parameters for some relevant terms. A royalty interest refers to the right to share in the production of oil and gas at severance. In Kansas, a royalty interest is considered personal property. Royalty interests are often contrasted with mineral interests, which refer to oil and gas in place. In Kansas, mineral interests are real property. *Kumberg v. Kumberg*, 232 Kan. 692, Syl. ¶ 2, 659 P.2d 823 (1983).

Both mineral and royalty owners share in royalties derived from an oil and gas lease. The mineral-royalty distinction determines whether the interest owner has additional rights and benefits that this court calls the " 'indicia of mineral interests.' " See *Drach v. Ely*, 237 Kan. 654, 658, 703 P.2d 746 (1985). Kansas has long recognized that property interests are subject to the rule against perpetuities. *Gore v. Beren*, 254 Kan. 418, 429, 867 P.2d 330 (1994). In *Gore*, this court said:

> "The rule against perpetuities springs from considerations of public policy. The underlying reason for and purpose of the rule is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarding at common law as a public evil." 254 Kan. 418, Syl. ¶ 9.

The rule against perpetuities began as a creation of common law, but the 1992 legislature codified and somewhat modified it by adopting the Uniform Statutory Rule Against Perpetuities. K.S.A. 59-3401 *et seq*. The statutory scheme supersedes the common-law rule. K.S.A. 59-3408. But the statutory rule only applies to nonvested property interests created on or after July 1992. See K.S.A. 59-3405(a); L. 1992, ch. 302, sec. 20. Therefore, the uniform rule from the statute is not applicable in this case because the DeLays' royalty interest was created by the 1924 deed. See *Gore*, 254 Kan. at 429 (holding uniform act did not apply to property interest cre-

ated in 1962). Accordingly, we revert to the common law to decide this case.

The common-law rule against perpetuities "precludes the creation of any future interest in property which does not necessarily vest within twenty-one [21] years after a life or lives presently in being, plus the period of gestation, where gestation is, in fact, taking place." *Singer Company v. Makad, Inc.*, 213 Kan. 725, 728-29, 518 P.2d 493 (1973). A future interest is an ownership interest that does not currently entitle the owner to possession or enjoyment of the property because the right to possess is delayed until some future time. 3 Restatement (Third) of Property, Future Interests § 25.1 (2011). The rule against perpetuities applies if it is possible that the interest will not vest during the permitted time period. *Gore*, 254 Kan. at 428. There are two kinds of future interests—reversions and remainders. 3 Restatement (Third) of Property, Future Interests § 25.2.

A future interest is a reversion if it was retained by the transferor and a remainder if it was created in the transferee. 3 Restatement (Third) of Property, Future Interests § 25.2. The royalty interest in this case is a reversion because Earl and Leah DeLay retained a portion of it when they executed the deed in question. In other words, at the time of the transaction in question, Keener received a lesser estate because the deed did not convey all of the DeLays' property rights. See Bergin & Haskell, Preface to Estates in Land and Future Interests, p. 56 (2d ed. 1984) ("When the owner of an estate transfers a lesser estate, the future estate that the owner keeps is called a *reversion*."). This court has previously recognized:

"Generally speaking, future interests reserved to or remaining in the grantor or in the estate of the testator are not subject to the rule against perpetuities. It is universally agreed that the possibility of reverter is not within the rule." *Trustees of Endowment Fund of Hoffman Memorial Hosp. Ass'n v. Kring*, 225 Kan. 499, 502, 592 P.2d 438 (1979) (citing Simes, Law of Future Interests § 132, p. 280 [2d ed. 1966]).

This rule was first applied in *Commercial National Bank v. Martin*, 185 Kan. 116, 340 P.2d 899 (1959). In that case, Commercial National Bank sued to quiet title to certain land devised to W.M. DeVore's son for life and upon his son's death to the Kansas Trust

Company to pay income to a school district. But if the district discontinued a course in vocational agriculture, the trust ceased and the funds reverted back to DeVore's heirs. DeVore's son, however, bequeathed the property to his spouse, and the trustee sued. This court addressed whether DeVore's will creating the trust with a possibility of reverter violated the rule against perpetuities. We held it did not because DeVore's will created the possibility of reverter and that interest is not subject to the rule. 185 Kan. at 122.

This court reaffirmed that reversionary interests are not subject to the rule against perpetuities in *Nelson*, 225 Kan. at 502. There, the trustees of a charitable trust benefitting a local hospital sued to determine who should own the assets once the hospital ceased operating. The trust instrument provided that the trust, income, and interest should become the property of George Green and his heirs if the hospital closed. This court examined whether that provision violated the rule against perpetuities. Green's heirs argued the trust was valid, citing our *Commercial National Bank* decision.

But the *Nelson* court distinguished the devise in *Commercial National Bank* because the corpus of that charitable trust reverted to the testator's heirs, *i.e.*, it was a reservation. Thus, it was not subject to the rule against perpetuities. In contrast, the trust in *Nelson* created a gift to a third-party noncharity, *i.e.*, it was a remainder, not a reversionary interest. 225 Kan. at 502. Since that interest did not necessarily vest within the required time, it violated the rule against perpetuities. 225 Kan. at 503.

The *Nelson* court's summary of the law on reversionary interests remains an accurate statement of the law. Future interests reserved or remaining in the grantor or his estate are not subject to the rule against perpetuities. See Simes & Smith, The Law of Future Interests § 1235, p. 184 (Borron 3d ed. 2002) ("vested remainders and reversions are not within the rule"); Gray, The Rule Against Perpetuities § 205, pp. 167-68 (2d ed. reprint 2000) (reversions and vested remainders are vested future interests not subject to the rule against perpetuities).

The Court of Appeals acknowledged the DeLays' interest was a reservation in the grantor and noted this could be "a critical and

possibly determinative fact." *Rucker*, 44 Kan. App. 2d at 279. But the panel declined to follow through with this reservation because *Nelson* did not involve a mineral or royalty interest. The panel believed there was a " 'conceptual problem' " with applying that principle in light of our caselaw holding a royalty interest does not vest until oil and gas is produced. 44 Kan. App. 2d at 279-80 (citing 1 Pierce, Kansas Oil and Gas Handbook § 4.14, p. 4-20 [1991]). We discuss those cases next.

This court has applied the rule against perpetuities to void royalty interests in two prior royalty interest cases: *Lathrop v. Eyestone*, 170 Kan. 419, 227 P.2d 136 (1951), and *Cosgrove v. Young*, 230 Kan. 705, 642 P.2d 75 (1982). Relying on *Cosgrove*, the Ruckers argue the DeLays' royalty interest is void. But the DeLays and *amicus curiae* urge us to either overrule it as an incorrect analysis of the law or distinguish this prior caselaw because the DeLays' royalty interest was reserved in the grantor.

In *Lathrop*, the landowner's fee title was subject to three interests held in trust by the defendants. The landowner filed an action to quiet the defendants' title to those lands. Three separate conveyances were at issue, and the preliminary question was whether the instruments created royalty or mineral interests. The *Lathrop* court held that the first instrument created a mineral interest and upheld that mineral interest because it was "an interest in the land." 170 Kan. at 424-25. But the *Lathrop* court held the other two instruments created royalty interests. 170 Kan. at 425-27. Notably, both of these instruments involved the grantors' transfer of a royalty interest to the grantee while the grantor maintained fee title to the land subject to the newly created royalty interest, *i.e.*, the royalty interest was not a reservation. See 170 Kan. at 422, 425-27.

After determining the grantor transferred a royalty interest, the *Lathrop* court examined whether the plaintiff was bound by the prior landowners' covenants purporting to grant an interest in the royalty, rent, and bonuses generated by future oil and gas leases when there were currently no leases applicable to the ground and no production. 170 Kan. at 427. The *Lathrop* court held the rule against perpetuities voided those interests, stating:

"We need not determine whether these instruments . . . were intended to be binding on subsequent fee title owners. If such was the intention when would the grant of such future interests vest? Appellant or future fee owners might never execute another lease. There is nothing in any of the instruments which imposes a duty on them to do so. Under the last two instruments, at least, the fee title owner would not be precluded from doing his own developing. [Citations omitted.] Moreover there is no limitation of time within which a future lease would be required to be executed, if one were actually executed. It is, therefore, wholly problematic when, if ever, such an interest under future leases would vest. Such a grant violates the rule against perpetuities, a rule against too remote vesting." 170 Kan. at 428.

*Lathrop* favors mineral interests by upholding the mineral interest created by the first instrument, while voiding the royalty interests created by the other two instruments. But the *Lathrop* court failed to clearly identify when a royalty interest vests.

In *Cosgrove*, the plaintiff landowners were successors in interest to land subject to a royalty interest created in 1918, and the defendants were the successors in interest of that royalty interest. The landowners sued to cancel or quiet the defendants' title, arguing that it violated the rule against perpetuities. And like the royalty interests in *Lathrop*, the grantor reserved fee title in the land, and the instrument at issue transferred a lesser interest to the grantees, his heirs, and assigns. The *Cosgrove* court held that the grantors conveyed a royalty interest applicable to the leases covering the property at the time of the conveyance and any future oil and gas leases based on the conveying instrument's language. 230 Kan. at 713. It then turned to whether that conveyance violated the rule against perpetuities.

Relying upon this court's analysis in *Lathrop*, the majority in *Cosgrove* held that the instrument violated the rule against perpetuities, explaining:

"As was the situation in *Lathrop v. Eyestone*, the instrument does not require the grantor or his successors to execute and deliver any future oil and gas leases at any future time. Naturally, if no future oil and gas leases are made and executed, there would never be a vesting of title to any royalty interest. If it is not certain the vesting will occur within the time stated in the rule, then the rule has been violated and the conveyance is void. Even if an oil and gas lease were required to be executed within the time prescribed by law, there would still be no vesting of title until royalty becomes due and payable to the grantor or his successor. The

execution and delivery of an oil and gas lease does not insure that there will ever be any production attributable to the lease. Additionally, as was the situation in *Lathrop v. Eyestone*, the instrument is not prohibitive of the grantor developing the minerals for himself, without any oil and gas lease being involved. Under such circumstances, there would never be any royalties paid to anyone." (Emphasis added.) *Cosgrove*, 230 Kan. at 715.

*Cosgrove* is notable because it is the first time this court expressly held that production is the vesting event. It is also worth noting the majority acknowledged this approach had been criticized, stating: "We are not unmindful that some other jurisdictions might well reach a different result in applying their case law to the issue herein." 230 Kan. at 715. But the court refused to overturn *Lathrop* because the parties did not raise it and "we see no compelling reason for change." *Cosgrove*, 230 Kan. at 715.

The DeLays and *amicus curiae* urge us to overrule both cases now. They cite considerable criticism of our holding that a royalty interest is a future interest that vests at production. And we acknowledge that holding has been criticized as conceptually invalid. See *Cosgrove*, 230 Kan. at 724-25 (Herd, J., dissenting) (arguing a royalty interest creates a present interest in real property and the only uncertainty is whether that interest will ever result in a share in the production); *Dauphin Island Property v. Callon Inst.*, 519 So. 2d 948, 949-51 (Ala. 1988) (criticizing *Lathrop* because a royalty interest is a vested interest even though uncertain in the enjoyment). *Cosgrove* and *Lathrop* have also been criticized as inconsistent with other caselaw upholding similar interests. See, *e.g.*, 2 Williams & Meyers, Oil & Gas Law § 323, p. 18.2 (2011) (stating that "[i]t is an odd fact that in Kansas the perpetuities attack has succeeded only with respect to royalty and nonexecutive mineral interests").

Other Kansas cases are difficult to reconcile with *Cosgrove* and *Lathrop*. See *Froelich v. United Royalty Co.*, 178 Kan. 503, 509-10, 290 P.2d 93 (1955) (upholding a nonparticipating mineral interest because it vested immediately), *modified* 179 Kan. 652, 297 P.2d 1106 (1956); *Howell v. Cooperative Refinery Ass'n*, 176 Kan. 572, 578, 271 P.2d 271 (1954) (upholding lease agreement provision creating overriding royalty interest in future leases because

the interest vested when the assignment was made and accepted); *Kenoyer v. Manglolia Petroleum Co.*, 173 Kan. 183, 188, 245 P.2d 176 (1952) (upholding lease agreement's unitization clause and royalty interest agreement because those interests vested upon the lease's execution and delivery).

The criticism about this court's prior vesting analysis has some merit. Thus, we decline to extend it to royalty interests reserved in the grantor. It is better to right the ship and apply the well-recognized property law principles excepting reservations from the rule against perpetuities despite any "conceptual" difficulties this may cause. But we need not determine in this case whether we should overrule our caselaw holding royalty interests created in a transferee are future interests that vest at production because that issue is not squarely before us.

Our resolution in this case is consistent with recent caselaw recognizing that "[t]he modern tendency is to temper the rule [against perpetuities] where its rigid application would do violence to an intended scheme for the disposition of property." *Drach*, 237 Kan. at 656; see also *First Nat'l Bank & Trust Co. v. Sidwell Corp.*, 234 Kan. 867, 876, 678 P.2d 118 (1981) ("[T]he recent trend among legal authorities is to relax the harsh and inflexible application of the rule, and instead follow tenable legal theories which will give effect to the intention of the parties."). We hold that the DeLays' royalty interest is not void under the rule against perpetuities. We reverse the district court's order quieting the DeLays' title.

Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part.

MORITZ, J., not participating.
BRADLEY E. AMBROSIER, District Judge, assigned.