## In re BOND'S ESTATE.
## STORY v. DAVISON.

No. 34757.   Jan. 22, 1952.

*240 P. 2d 1116.*

J. R. Huggins, Elk City, for plaintiff in error.

Butler & Montgomery, Fairview, for defendant in error.

WELCH, J.  On the 17th day of February, 1950, Charles Slack was appointed administrator of the estate of Rosetta Bond, deceased, by the county court of Major county, Oklahoma.  The appointment was made on petition of Nettie L. Davison, the eldest daughter of deceased, who will be herein referred to as petitioner.  In her petition she waives her right to be appointed administratrix and requests that Mr. Charles Slack be appointed.  The petition states that deceased, Rosetta Bond, died on November 28, 1949, at Elk City, Oklahoma; that she left surviving her as her only heirs, Nettie L. Davison, a daughter, Ethel Story, a daughter, and Perry Bond, her husband.  The evidence shows that her husband is physically unable to act as administrator and he made no application to be appointed nor did he request the appointment of any other person.

Sometime prior to her death deceased was adjudged an incompetent person by the county court of Major county, and Charles Slack was appointed guardian over her person and estate.  She had not been restored to competency prior to her death.

No written protest was filed by any person to the appointment of Charles Slack as administrator, but Ethel Story, daughter of deceased, and referred to herein as protestant, appeared at the hearing with counsel and orally objected to the jurisdiction of the county court of Major county to administer upon the estate for the reason deceased was a resident of Beckham county at the time of her death; that

the court is without jurisdiction to entertain any proceeding to appoint a stranger as administrator for the reason other persons mentioned in the statute, 58 O.S. 1951 §122, have a prior right to the appointment and have not waived that right.

Protestant, however, filed no written protest against the appointment of Mr. Slack, nor did she request or in any way assert her right to the appointment by the county court of Major county at the hearing in that court.

Upon the filing of the objection, and upon agreement of the parties as to continuance, and as to filing briefs or as to presenting authorities to the court, the county court continued the case for hearing until the 17th day of February, 1950. In the meantime, protestant filed an application in the county court of Beckham county requesting that she be appointed administratrix of the estate of Rosetta Bond, deceased, and in her application stated that deceased was a resident of Beckham county at the time of her death. The case was heard in the county court of Beckham county over the objection of petitioner and at that hearing protestant's application was denied. She appealed to the district court of Beckham county and the appeal was there pending at the time the present case was heard.

Thereafter, on the 17th day of February, 1950, after full hearing, the county court of Major county overruled protestant's objection to the jurisdiction and entered an order appointing Charles Slack administrator of the estate. An appeal was taken by protestant to the district court of Major county where, on hearing de novo, the order and judgment of the county court was affirmed.

Protestant appealed to this court and asserts among other things that the evidence discloses deceased was a resident of Beckham county at the time of her death, and that the county court of Major county was therefore without jurisdiction to appoint an administrator.

The evidence as to the place of residence of deceased at the time of her death is conflicting. It is undisputed that deceased resided in Fairview, Major county, Oklahoma, for a great portion of her time from the date of her birth until May 5, 1949; that prior to said time and in the early part of 1947 she became ill, was placed in the hospital at Enid, Oklahoma, for treatment where she remained for several weeks. She was then returned to Major county and was placed in the home of petitioner where she remained until the time above stated. Her husband then became ill and it was impossible for petitioner to longer take care of her. It was then agreed by and between petitioner, protestant, deceased and her guardian that she was to be taken to Clinton, Oklahoma, for further medical treatment and while there she was to make her home with protestant, who at that time lived and still lives in Clinton. All deceased's assets are located in Major county.

Protestant testified that deceased, while living with her, on several different occasions stated that she intended to live with her as long as she lived. Several other witnesses testified that she expressed the same intent to them at different times. This is, in substance, the evidence offered by protestant to establish that deceased's residence was in Beckham county at the time of her death. On the other hand, petitioner offered evidence tending to show that deceased's presence in Clinton, Beckham county, Oklahoma, was temporary and only for the purpose of medical treatment; that she never intended to abandon her residence in Major county.

Considering the evidence as a whole we cannot say that the holding of the county court of Major county, affirmed by the district court on appeal, that deceased was a resident of Major county at the time of her death, is clearly against the weight of the evidence. This court, in Franklin v. Beard, 171 Okla.

254, 42 P. 2d 835, held evidence very similar to the evidence offered in the present case sufficient to sustain the finding of the county court that deceased was a resident of Marshall county at the time of his death as against the contention of protestant that he was then a resident of Atoka county.

It is further contended by protestant that the county court of Major county was without jurisdiction to appoint Charles Slack, a stranger, as administrator for the reason there were other persons in the same class as petitioner who had a prior right to the appointment and have not waived that right, and petitioner did not have the right to designate or nominate an administrator to the prejudice of their rights. This contention is correct as an abstract proposition of law. 58 O.S. 1951 § 122. This section, as far as here material, provides:

"Administration of the estate of a person dying intestate must be granted to some one or more of the persons hereinafter mentioned, and they are respectively entitled thereto in the following order:

"1. The surviving husband or wife, or some competent person whom he or she may request to have appointed.

"2. The children. . . ."

The general rule is that where certain persons as a class are by statute given a prior right to the appointment as administrator of a deceased person one of such class has no authority upon waiving his right to designate or nominate an administrator to the prejudice of others in the same class having this same right. Hood v. Higgins, 225 Ky. 718, 9 S.W. 2d 1078; Justice v. Wilkins, 251 Ill. 13, 95 N.E. 1025; In re Olcese's Estate, 210 Cal. 262, 291 P. 193; Peck v. Greene, 27 R. I. 487, 63 Atl. 489.

Protestant, however, is not in a position to invoke such rule or to assert that the county court had no authority to appoint Slack as administrator. She made no application to be appointed administratrix by the county court of Major county, nor did she in any manner assert her right to the appointment at the hearing in that court, but, on the contrary, she there contended and now contends that the county court of Major county was without jurisdiction to appoint any person administrator. In these circumstances, and since there was no other applicant, the county court committed no error·in appointing Charles Slack administrator at the request of petitioner.

58 O.S. 1951 § 132 provides;

"Letters of administration must be granted to any applicant, though it appears that there are other persons having better rights to the administration when such persons fail to appear and claim the issuing of letters to themselves."

It is further contended by protestant that the order of the county court of Major county adjudging deceased an incompetent person and appointing Charles Slack as her guardian is void on its face. A great portion of her brief is devoted to a discussion of this question. We do not think this·question has any material bearing on the present case.

Assuming that deceased was competent at the time she left Major county for Clinton, and was then mentally capable to select and choose her place of residence and had such right free from any control of her guardian, still, under the evidence in this case, it cannot be said that the holding of the county court, and affirmed on appeal by the district court, that she had not changed her residence and was a resident of Major county, Oklahoma, at the time of her death, is clearly against the weight of the evidence.

Since protestant made no application to be appointed administratrix or in any manner asserted her right to such appointment by the county court of Major county, and the only application for appointment then before the court for consideration was the petition filed by petitioner herein requesting the ap-

pointment of Charles Slack, the county court committed no error in making such appointment, and the district court on appeal ruled correctly in affirming such order.

Judgment affirmed.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.